### REDWAY *et al. v.* OHIO STOVE CO.

*(Circuit Court, S. D. Ohio, W. D.  May 4, 1889.*

**1. PATENTS FOR INVENTIONS—DESIGN PATENTS—NOVELTY.**
    A design to be patentable must be so different from all others existing before it as to appear to be different to ordinary observers, and it is immaterial that the amount of novelty is small.

**2. SAME—INFRINGEMENT.**
    The test for infringement of a design patent is that the designs appear the same to ordinary observers, and the fact that there are minor differences of detail in the manner in which the appearance is produced, noticeable only by experts, does not relieve the design from condemnation as an infringement; nor is it material that the alleged infringer used his own name and the name of his own article conspicuously in connection with the design.

In Equity. Action for infringement of a patent.
*William Hubbell Fisher*, for complainants. .
*Bateman & Harper*, for defendant.

SAGE, J. This suit is for infringement of design patent No. 16,664, granted April 27, 1886, to the complainants as assignees of John F. Martens, for a design for a cooking-stove. The claims relate to the ornamentation of the doors and other parts of a stove with sprigs, flowers, bud, leaves, butterfly, and bird, as shown and described in the letters patent; also the configuration and ornamentation of the legs, substantially as shown. The defenses relied upon are that the designs claimed and shown are not novel; that they are not inventions, nor patentable; that Martens was not the first producer or inventor thereof; and that the defendant does not infringe. The ornamentation of the oven door—which will serve as an illustration of the ornamentation of the stove, and avoid the necessity of setting forth the specifications and claims particularly—is by a series of twigs or sprigs, extending from the lower rear corner forward and upward across the door. On the upper branch is a flower of rose-like form. The lower branch passes forward somewhat under the handle of the door, and depending from it is a bud; to the upper rear side of the branches is a bird, and on the lower branch a butterfly; but the leading feature of the ornamentation is the particular branch with stems and flowers as above described. The defendant has put in evidence quite a number of designs, all of date prior to complainants' patent, and claimed to be in anticipation thereof. Prominent among these are the "Jewel Range," a Detroit stove, and the Vedder patent, No. 609, granted November 8, 1853. In ornamentation of the oven door of the Jewel range is found a series of twigs or sprigs extending from the lower rear corner forward and upward across the door. On the upper branch is a flower of rose-like form, and the lower twig or branch passes forward somewhat under the handle of the door. In a word, the description above of the ornamentation of the complainants' stove—which is taken in the main from the specification of the patent—would answer in the particulars above for a description of the ornamentation of the Jewel range. In addition to the points of resemblance already stated, the

ground of the oven-doors of both stoves is pebbled, both doors are swelled, and both have broad, buffed edges all around, except on the rear. But when the doors themselves are placed side by side, as was done upon the hearing, the difference between them is at once plainly apparent, even to a casual observer. The same may be said of the Vedder stove, and of all the other alleged anticipating devices. Now, what is the proper test of the validity of a design patent? The statute (section 4929, Rev. St.) authorizes, among other things, the granting of a patent to any person who has by his own industry, genius, efforts, and expense invented and produced any new and original design for an ornament to be cast on any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any patented publication. The design must be new and original, and an invention. But there need not be a great invention. That is not essential to the validity of any patent. The statute must have a construction reasonable, and at the same time favorable to its beneficial operation. As was said by the court in *Simpson* v. *Davis*, 12 Fed. Rep. 145, the result of the industry, genius, effort, and expense employed must "be a single ornament which, taken as a whole, can be considered to be the embodiment of a new idea in ornamentation. The amount of the novelty may be small, but the effect of the ornament must, to some extent at least, be new. The ornament may in this sense be new and original, although all the forms used in its composition are old and well-known forms of ornamentation." Take, in this connection, the following extract from *Perry* v. *Starrett*, 3 Ban. & A. 489:

"In *Gorham Co.* v. *White*, 14 Wall. 511, it was held that to constitute infringement of a design patent the designs must be so similar as to appear to ordinary observers to be the same, and that they need not be so near alike as to appear to be the same to experts. It would seem to follow that, to constitute a new design that would be patentable as such, it must be so different from all others existing before as to appear to be such to the same class of ordinary observers."

Applying the tests suggested by these quotations, it is quite clear that the design patented to complainants displays invention, and that it is not anticipated by any of the designs produced upon the hearing by the defendant. It is not a mere aggregation of parts, as claimed by the defendant, not only for the reasons already suggested, but also because, as testified for the complainants, it is "a conventional design." And in this very respect it displays invention. It differs essentially from the earlier designs in that, instead of being substantially copied from nature, it is the embodiment of a new and original conception; and the fact that the bird, the butterfly, and the bud, which, although parts of the design, may properly be regarded as accessories, are not new or original, does not sustain the claim that there is a mere aggregation of old and well-known parts; nor does it invalidate the patent.

With reference to the defense that Martens was not the first inventor, it is sufficient to say, without going into details, that it is not supported by the evidence.

The question of infringement alone remains to be considered. The defendant's design omits the bird and the butterfly, and in other but minor details is different from the complainants', but the general appearance and effect of the two are the same, and bring the defendant's design clearly within the rule laid down in *Gorham Co.* v. *White*, cited *supra*. The supreme court say in that case that the acts of congress which authorize patents for design contemplate not so much utility as appearance, and that " the law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public.   *   *   *   Manifestly the mode in which these appearances are produced has very little, if anything, to do with giving increased salableness to the article.   It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense.   The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, but, in whatever way produced, it is the new thing or product which the patent law regards."   Now, add to this the further consideration taken from the decision of the court in that case, that " the purpose of the law must be effected, if possible; but plainly it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement," and we are forced to the conclusion that the omissions and changes in the design as used by the defendant do not relieve it from liability as an infringer, nor does the fact that it used its own name and the name of its own stove, conspicuously displayed, in connection with the design.   The rule is the same as in trade-mark cases, and in *Menendez* v. *Holt*, 128 U. S. 514, 9 Sup. Ct. Rep. 143, it was held that the addition of the infringer's name to a trade-mark, in the place of the owner's, does not render the unauthorized use of it any less an infringement.   The decree will be for the complainants upon all the claims of the patent excepting the second and the seventh, for an injunction, and, under the act of February 4, 1887, (24 U. S. St. at Large, 387,) for the sum of $250, and for an account, with costs.