## DAVIS et al. v. CAVANAUGH et al.
### No. 9890.

Court of Civil Appeals of Texas. Austin.

June 7, 1950.

Rehearing Denied June 28, 1950.

Archer & Archer, Fancher Archer, all of Austin, for appellants.

Silas J. Maxwell and Anna I. Sandbo, of Austin, for appellees.

HUGHES, Justice.

This suit originated in the County Court of Travis County and was an action to declare the heirship of George Ann Barrow, deceased.

Appellant Annie Laurie Barrow Davis alleged that she was the only surviving child of decedent, who was unmarried at the time of her death, and hence her only heir. Appellees, who were defendants in the trial court, are collateral kindred of decedent.

Judgment of the County Court and judgment of the District Court on appeal was that appellant was a niece and not a daughter of decedent. Her claim that she is a daughter is not that she is a natural daughter, but that she is an adopted daughter, the adoption, if any, being by estoppel only.

Before discussing the merits of this appeal we will first dispose of appellees' counter point which questions our jurisdiction to do anything but dismiss the appeal.

In appealing from the County Court to the District Court, appellant filed an affidavit in lieu of an appeal bond which was drawn as required by Rule 355, Texas Rules of Civil Procedure [1] and not under the provisions of applicable Rule 333, T.R.C.P. When objections were made to this affidavit in the District Court that court, upon appellant's request, permitted amendment of the affidavit to meet such objections. This was proper practice. Rule 437, T.R.C.P. Commercial Credit Corp. v. Smith, 143 Tex. 612, 187 S.W.2d 363.

The only point of error made by appellant is that the evidence showed, as a matter of law that she was the daughter of decedent by adoption by estoppel.

1. Pertaining to appeals to Courts of Civil Appeals.

Trial was before the court, and among the findings of fact made by the trial judge are these:

"George Ann Barrow, decedent, married William Barrow on August 9, 1930, and they lived together as husband and wife until the death of William in July 1943. George Ann died in January 1947.

"About fifteen months after William and George Ann were married, the plaintiff went to live with them. She so resided until the date of the death of William Barrow, and after that date she resided with George Ann Barrow until the date of the death of George Ann Barrow. * * * George Ann Barrow did furnish the plaintiff a home, food, and shelter from July 1943 until the date of her death * * * Plaintiff was known as Annie Laurie Barrow and she called George Ann Barrow 'Mama.' "

We will briefly review the evidence upon which the above findings were based as well as other evidence which is without dispute.

Annie Laurie was the child of Lindsay and Lou Harvey. She was born in 1924. Lou Harvey and George Ann Barrow, decedent, were sisters. Annie Laurie's father died shortly before she was born. Her mother, Lou, died when Annie Laurie was fifteen months of age. Before her death Lou requested her sister, George Ann, to take Annie Laurie and rear her as her own. George Ann did not completely discharge this request until after her marriage to William Barrow in 1930, but from not later than 1931 Annie Laurie lived in the home of George Ann and William Barrow until their respective deaths. They lived together as a family. Annie Laurie addressed William as her father and George Ann as her mother and the familiar "Uncle" and "Aunt" device was not used. She was known in the neighborhood as Annie Laurie Barrow. Neither William nor George Ann Barrow made public the fact that Annie Laurie was not their child.

The family census blank for the year 1937 was signed "George Ann Barrow," and sworn to before the census trustee. This blank gave the scholastic's name as "Barrow, Annie Laurie," and listed her father as "Barrow, William," and her mother as "Barrow, George Ann."

The family census blank for the year 1938 was the same.

One of the teachers from Anderson High School in Austin testified that the permanent records of such school showed that under the name of Annie Laurie Barrow was given the date of her birth, school last attended, her grades for 1939, 1940–41, 1941–42, and the names of her parents as "Mrs. Georgia Barrow, William Barrow."

When George Ann died she left some insurance to Annie Laurie and the relationship between them was stated in the policy to be mother and daughter.

The evidence also shows that in 1935 when Annie Laurie was eleven years of age an insurance policy was issued on her life with George Ann as beneficiary, and her relationship was stated to be "mother." A similar policy with similar recitations was issued in 1943.

Annie Laurie testified that she had never known any other father or mother, or any other home; also that she worked and contributed to the support of the home and during her father's last illness had worked for a Mrs. Wyatt, in her mother's place, so that she could be at home with her husband.

The trial court made the following legal conclusions:

(1) "The evidence is insufficient to sustain a finding that George Ann Barrow ever agreed with any person at any time to adopt plaintiff."

(2) "The evidence is insufficient to support a finding that George Ann Barrow held out the plaintiff to the public as her child or adopted child."

(3) "The evidence is insufficient to support a finding that the use of such name (Annie Laurie calling George Ann 'Mama') was due to the suggestion or procurement of George Ann Barrow."

(4) "The necessary elements for an adoption of plaintiff by estoppel being absent the facts do not justify a decree establishing same as prayed for by plaintiff."

As we understand the judgment of the trial court, it was based entirely upon a lack or insufficiency of the evidence, as a matter of law, to show an adoption by estoppel and not upon any discretionary weighing of the evidence one way or the other. In other words, if the facts above set out are sufficient to support a finding and judgment of adoption by estoppel we do not construe the findings or conclusions of the trial court to be opposed to the rendition of such a judgment.

The doctrine of adoption by estoppel is authoritatively recognized in this State. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, 81; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. In both of these cases the court quoted with approval from an opinion of the Supreme Court of Missouri in Holloway v. Jones, 246 S.W. 587, the following which states the controlling principles of this doctrine: "In all these cases it is held, in substance, that one who takes a child into his home as his own, receiving the benefits accruing to him on account of that relation assumes the duties and burdens incident thereto, and that where justice and good faith require it the court will enforce the rights incident to the statutory relation of adoption. The child having performed all the duties pertaining to that relation, the adopting parent will be estopped in equity from denying that he assumed the corresponding obligation. In equity it will be presumed that he did everything which honesty and good conscience required of him in justification of his course."

In our opinion the evidence above recited brings this case well within the above stated principles. We will not again restate such evidence. It speaks for itself. We will, however, notice the four conclusions made by the trial court.

As to the first, we do not understand the law to require that there need be any direct proof of specific agreement to adopt when adoption by estoppel is relied upon. The contract is evidenced by the acts and conduct of the parties or, stated another way, the acts and conduct of the parties estop them from denying the existence of a contract. See the excellent opinion of the San Antonio Court of Civil Appeals in Garcia v. Quiroz, 228 S.W.2d 953; Roberts v. Roberts, 8 Cir., 223 F. 775, and Kay v. Niehaus, 298 Mo. 201, 249 S.W. 625.

As to No. 2 we find the evidence to be overwhelming that George Ann did hold Annie Laurie out to the public as her own child.

The third conclusion is not upon a controlling issue but we think the evidence not only sufficient but overwhelming that Annie Laurie called George Ann "Mama" with the latter's acquiescence and consent. It is simply incredulous that a six-year old child would commence calling a woman "Mama" and continue doing so for sixteen years unless the woman was at least agreeable to such appellation.

We have already intimated that, in our opinion, the elements of an adoption by estoppel are present and that the trial court erred in concluding that they were not.

If the trial court weighed the evidence factually as distinguished from his legal deductions therefrom, then we are of the opinion that his judgment is so against the overwhelming preponderance of the evidence as to be clearly wrong.

The judgment of the trial court is reversed and this cause remanded.

Reversed and remanded.

ARCHER, C. J., not sitting.

On Motions for Rehearing.

HUGHES, Justice.

Appellant has filed a motion for rehearing, in which she prays that we render judgment for her. Appellees, in their motion, pray that there be an affirmance.

Our judgment reversing and remanding the case, if construed as a general remand on the ground that the evidence was insufficient, cannot stand, because appellant made no assignment of error to such effect. Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164.

There can be no mistaking the import of our opinion. Clearly, it was that under

the undisputed facts and circumstances appellant was the child of George Ann Barrow by adoption by estoppel.

We, therefore grant appellant's motion for rehearing, set aside our former judgment remanding this case, and here render judgment establishing appellant's status as a child of George Ann Barrow.

Appellees' motion for rehearing is overruled.

Appellant's motion granted—judgment of remand set aside and judgment rendered for appellant. Appellees' motion overruled.

ARCHER, C. J., not sitting.